**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVAN VON STAICH,

        Plaintiff,

  vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS; LINDA L. RIANDA, Chief, Inmate Appeals Branch, individually and in her official capacity; and CTF-Soledad Captain J. CLANCY, in his official capacity,

        Defendants.

No. C 04-2799 PJH (PR)

**ORDER GRANTING DEFENDANTS MOTION TO DISMISS**

        This is a civil rights case filed pro se by a state prisoner. He contends that cutting his hair to comply with the prison grooming policy, which limited prisoners' hair to three inches in length, would violate his Nazirite religious beliefs, and that the punishment he received for failing to comply with the grooming policy violated Section 1983; 42 U.S.C. § 2000cc *et seq*, the Religious Land Use and Institutionalized Persons Act (RLUIPA); and 42 U.S.C. § 12102(2), the Americans with Disabilities Act (ADA). In the initial review order the court dismissed the claims against all defendants except Rianda and Thomasetti. The clerk was ordered to serve process on those two defendants. Both defendants turned out to be retired; service was achieved upon defendant Rianda, but not upon defendant Thomasetti. Plaintiff's motion for a preliminary injunction was denied because there was no served defendant who could implement an injuction if one were granted.

        Defendant Clancy, who apparently is the present captain in charge of plaintiff's unit, was subsequently substituted for the retired Thomasetti as to the official capacity claim against Thomasetti. The claim against Thomasetti in his individual capacity was dismissed

for failure to obtain service. The court also granted defendant Rianda's motion to dismiss the Section 1983 claim against her. Thus, the remaining claims are the RLUIPA and ADA claims against Rianda in her official and individual capacities, and the Section 1983, RLUIPA, and ADA claims against Clancy in his official capacity only.

Once Clancy had been substituted, there was a defendant to whom the court could direct an injunction. Plaintiff renewed his motion; at the court's request, defendants filed an opposition in which they informed the court that the hair regulations had been changed to allow hair of any length. Plaintiff has also filed a motion to "reinstate" Thomasetti. Defendants have filed a motion to dismiss, which plaintiff has opposed. The motions are ready for ruling.

**DISCUSSION**

*A.   Defendants' motion to dismiss*

*1.   Exhaustion*

Plaintiff contends that his rights under the ADA were violated when, as a result of his refusal to comply with the hair-length regulations, he was confined in a small cell where he was unable to walk sufficiently to avoid problems with a back injury. Defendants contend that the ADA claim is not exhausted.

*a.   Standard*

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v Nussle*, 122 S. Ct. 983, 988 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v Churner,* 532 U.S. 731, 741

(2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 122 S. Ct. at 992.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision at the director's level satisfied the exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

Nonexhaustion under § 1997e(a) is an affirmative defense. *Wyatt v Terhune*, 315 F.3d 1108, 1119 (9th Cir 2003). It should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Id.* (citations omitted). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice. *Id.* at 1120.

### b. *Application*

The prison has an administrative appeal system for ADA claims. The initial complaint is made on a CDCR form 1824. Cal. Code Regs. tit. 15, § 3085. If the prisoner is dissatisfied with the answer at the first formal level, he or she can proceed to the second and third formal levels by attaching the form 1824 to the normal inmate administrative appeal form, a CDCR 602, and forwarding it to the Appeals Coordinator. This is explained

3

on the form 1824 itself.  If still dissatisfied, the prisoner can follow the usual 602 procedure of appealing to the director.  This also is explained on the form 1824.

Defendants contend, and have properly supported with declarations, that plaintiff did not exhaust his ADA claim by filing a form 1824.  In opposition, he contends that he did indeed file that form, without specifying what the grounds were; he refers to his exhibit A as proof.  Exhibit A attached to the opposition does indeed contain a form 1824, but it is a contention that a Dr. Grewel (not a defendant here) refused to renew a "chrono," which in this case was a medical order regarding not lifting more than fifteen pounds.  That is, the form by which plaintiff contends he exhausted this claim did not contain the claim as presented here.  The ADA claim is not exhausted and will be dismissed.

*2.     Injunctive relief*

Defendants assert that plaintiff's claims for injunctive relief are moot because the prison has implemented a new regulation which allows hair to be any length.  In his complaint plaintiff requested that defendants be ordered to (a) stop punishing him for his refusal to cut his hair; (b) hold an immediate classification hearing to remove him from his "hard C" status and return him to A-1-A status; (c) give him an "exemption" from the three-inch haircut rule; (d) remove all rule violation reports based on failure to comply with the grooming policy from his central file; (e) transfer him "back to CTF-Central;" and (f) not retaliate against him for filing this action.

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution.  *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).  A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances.  *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

Because of the new regulation, prison authorities held a special classification

4

committee meeting in which plaintiff was retroactively returned to A-1-A status and the rule violations report was "removed" and good time restored.  The new regulation, which prevents future action against plaintiff for over-long hair, and the classification committee meeting and the actions taken there, moot injunctive relief requests (a) through (d). Plaintiff's request for an order that defendants not retaliate against him for filing this action, although not moot, must be denied because the court cannot grant injunctive relief which is not related the subject of the suit.  *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (party seeking injunctive relief must show "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"; prisoner's request for injunction against retaliation for lawsuit was properly denied because not related to medical care issue of complaint).  And plaintiff does not dispute that his request for an order requiring that he be moved to "CTF-Central" is moot.  Thus all the injunctive relief claims are moot or must be denied as not related to the subject of the suit.  Plaintiff's contention that the claims are not moot because he may be proceeded against in the future under a new regulation which limits the length of beards does not prevent mootness -- there is no claim regarding beard length in this case.

Because all of plaintiff's claims against defendant Clancy are for injunctive relief (he is sued only in his official capacity), he will be dismissed from the case.  Any claims against Rianda in her official capacity also will be dismissed.

*3.     Qualified immunity*

Defendants contend that they are entitled to qualified immunity.  Because the only claims against Clancy were injunctive relief claims, to which qualified immunity does not apply, and which claims have in any event been found moot above, the court will consider this claim only as to Rianda.

The only remaining claims in this case are those for damages against defendant

Rianda in her individual capacity for violating plaintiff's rights under RLUIPA.[1]

      *a.*      *Standard*

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." *Wilson v. Layne*, 526 U. S. 603 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S.

---

[1] In view of the resolution here on other grounds, the court has not considered whether RLUIPA permits suit against defendants in their individual capacity, *see Boles v. Neet*, 402 F.Supp.2d 1237, 1240 (D. Colo. 2005) (RLUIPA actions lie against governments, and do not appear to be permitted against individuals in their individual capacities); *Guru Nanak Sikh Society of Yuba City v. Sutter*, 326 F.Supp.2d 1128, 1136 (E.D. Cal. 2003) ("government" in RLUIPA includes officials, so actions are permitted against them at least in their official capacities), and whether money damages can be recovered for violation of RLUIPA, *see Boles*, 402 F.Supp.2d at 1241 (holding damages not available).

at 201.  On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established.  *Id.*  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.  *Id.* at 202.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.*  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id.*

Even if the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205.

### b. *Analysis*

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, provides:  "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  The statute applies to any "program or activity that receives Federal financial assistance."  42 U.S.C. § 2000cc-1(b)(1).

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *San Jose Christian College v. Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (citing 42 U.S.C. § 2000cc-5(7)(A)).  RLUIPA does not define "substantial burden."  *Id.*  Construing the term in accord with its

7

1 plain meaning, the Ninth Circuit holds that "a 'substantial burden' on 'religious exercise'
2 must impose a significantly great restriction or onus upon such exercise." *Id.*; *see id.* at
3 1035-36 (City's denial of rezoning application by College which sought to build non-secular
4 school on property zoned for hospital use was not substantial burden on religious exercise;
5 College could use other sites within the city and other entities would be subject to same
6 restrictions).

7 In properly applying RLUIPA, courts must take into account the burden
8 accommodations may impose upon nonbeneficiaries and must satisfy themselves that the
9 act is being applied neutrally among different faiths. *Cutter v. Wilkinson*, 544 U.S. 709, 720
10 (2005). The accommodation must be measured, so that it does not override significant
11 interests such as safety and maintaining order. *Id.* at 721. Although the Act adopted a
12 "compelling governmental interest" standard, the context must be considered; congress
13 expected the courts to apply the Act with due deference to prison authorities' expertise, *id.*
14 at 723, and prison security is a compelling state interest, *id.* at 725 n.13.

15 On the first prong of the *Saucier* analysis, plaintiff has provided allegations which, if
16 proved, would show a violation of his RLUIPA rights. *See Warsoldier v. Woodford*, 418
17 989, 994-1001 (9th Cir. 2005) (appeal of denial of preliminary injunction; holding that
18 prisoner likely to prevail on the merits of RLUIPA claim challenging California grooming
19 policy).

20 The second *Saucier* prong is whether in light of existing law it would have been clear
21 to a reasonable officer in the position of the movant that his or her conduct was unlawful.
22 *Saucier*, 533 U.S. at 202.

23 Defendant Rianda was the director of inmate appeals at the headquarters of the
24 then-CDC in Sacramento. In April of 2002 she denied plaintiff's third-level inmate
25 administrative appeal in which he contended that the grooming policy as applied to him
26 violated his rights. There are no other allegations regarding her involvement in these
27 events; therefore, the question is whether, under the law as it existed in April of 2002, it
28 would have been clear to a reasonable officer in her position that her action was unlawful.

RLUIPA is relatively new, having only been passed in 2000. The only Ninth Circuit RLUIPA decision filed before May of 2002 was *Wyatt v. Terhune*, 280 F.3d 1238 (9th Cir. 2002), which held only that on remand the district court should permit an amendment to add a RLUIPA claim. *Id.* at 1240. Even aside from that fact that this opinion was subsequently superseded, *see Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), it obviously would not alert a reasonable officer in the position of Rianda that her actions were unlawful. None of the four decisions by other courts of appeals which were filed before May of 2002 is relevant.

There also were twelve district court decisions by May 1 of 2002. Only one, *Toles v. Young*, 2002 WL 32591568 (W.D. Va. 2002), an unpublished decision, involved grooming regulations, and in that case the court granted summary judgment for defendants on the RLUIPA claim, holding that a grooming requirement very similar to California's did not violate RLUIPA. *Id.* at *9-10. Far from showing that a reasonable person in Rianda's position would have known in April of 2002 that she was violating plaintiff's rights, this case suggests the opposite: That a reasonable person in her position would have thought that it was *not* a violation of RLUIPA to enforce the grooming requirement over plaintiff's religious objections.

It thus is clear that the law as it existed at the time of the alleged violation was not such that a reasonable officer in Rianda's position would know that she was violating plaintiff's RLUIPA rights. The motion to dismiss the remaining claims against Rianda on grounds of qualified immunity will be granted.

B.   *Plaintiff's motions*

Plaintiff has renewed his request for a preliminary injunction, now that a current correctional employee, Clancy, is a defendant. Although plaintiff contends that his claims are not moot because of a threat of action against him for refusal to shave his beard, there is no beard claim in this case. The request for an injunction is moot because the CDCR has eliminated its hair-length policy, and because of the disposition of the claims against the remaining defendants above.

Plaintiff also has moved to "reinstate" his claims against defendant Tomasetti and take further steps to serve him.  Any injunctive relief claims against Tomasetti would be without merit because, being retired, he has no power to grant injunctive relief and because those claims are moot; and damages claims would be barred by qualified immunity just as the claims against Rianda are.  The motion to reinstate will be denied.

### CONCLUSION

The motion to dismiss (document number 41 on the docket) is **GRANTED**.  The complaint is **DISMISSED** with prejudice.  Plaintiff's motions (documents 29 and 31) are **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  September 25, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.04\STAICH799.MDSMSS